thank you your honor and may it please the court also I wish at this point council would you introduce yourself for the record yes I will my name is Bruce Fredrickson I am counsel for the plaintiff appellant in this matter Alan Gerhart seated at council table with me is Angela Duke another lawyer who was assisted in this case and mr. Gerhart very well I wish at this point I could turn to my right and address the members of the jury but unfortunately I cannot do that I can't do that in light or in spite I guess of the many many material issues of fact that exist in this case I know the court is well aware of the underpinnings of the case and has been briefed on those so I don't intend to go in well let's start with the property interest in the permit help us sort that out I I would be very very happy to help you sort that out and if I could I'd like to reserve about two just watch the clock and yes it's in front of you go and the district court the district court did not get beyond really the first prong of the analysis and that is determining whether this in fact is a protected property interest and then second obviously do the facts support the existence of property interest the district court I believe your honor and I would submit aired when it relied primarily on two things to reach the conclusion that a property interest did not exist in this case first it relied on Montana code annotated section 7-21 or 14-2101 and and and then also the shanks case in conjunction with that the court stopped its analysis there it said that 2101 imparts broad discretion on the county in dealing with roads and it says that shanks supports that proposition and that's where the court stopped its analysis what the court what the district court did not do is recognize that line of cases and recognize the line of cases that that about the creation of a property interest outside the confines of the statute even where that statute confers broad discretion on the county what the statute does not do it does not prohibit the county from defining the criteria necessary to obtain the type of permit that Mr. Gearhart but what is it that entitlement to a permit in this case because that's what you have to help us with things outside of the statute will concede the statute does not in and of itself establish a property interest but the county's actions certainly do the county's criteria in issuing these this type of permit was based on a long-standing history of working with the property owner working with the and the testimony I think is pretty clear to ensure that the permit in fact is issued kind of fuzzy the well not really because the what there are other facts also that that go to that that same issue here when mr. Gearhart in November of 2007 actually began construction of his access road prior to that time in the face of all of his neighbors having very similar access none of whom had permits in November of 2007 the County Road superintendent Larry Ely approaches mr. Gearhart and says you need a permit okay mr. Gearhart said fax me the the application or whatever you have we'll deal with it he does that and gets the permit the permit signed back signed by mr. Ely it doesn't have to be signed by the commissioners or not there is no there is no although the Commissioner's signatures appear or lines for their signatures appear on the permit nowhere on the permit does it say that the County Road superintendent does have authority to issue it so your argument as a legal matter is then that the permit in fact was issued when Ely signed it is that correct yes yes it was or at least there was a reasonable expectation on mr. Gearhart's part that that was the end of the story because mr. Ely at the time and in a permit does not limit mr. Ely's discretion when mr. Ely signs the permit gives it back to mr. Gearhart signed and the permit and application are interesting in and of themselves because the application and the permit are one and the same document is the is the permit issued in the name of the county or is it issued in the name of the roads supervisor it is the permit itself is no by statute or by ordinance there there is no statute nor ordinance that defines it all right the resolution and it was adopted by the council there there is none what what the crate the criteria for issuance of the permit are laid out in the permit itself and the criteria are also but isn't by charter from the legislature the no authority to legislate for the county vested in the commissioners yes it is so every act of government really is done in their name that that is entirely true and in the statute and that's why they had three signature lines on it right no because the statute the staff how many did they have three there are there are there are actually four signature lines on the permit one for the county road supervisor and then there are three signature lines for the commissioners but the commissioners testimony is interesting in that light as well because the commissioners all testify well it didn't really take all three of our signatures nowhere on the permit does it say that no nor does the permit say it takes any of their signatures in fact the the commissioners oftentimes did not even require a permit the application and permit again are the same document and lay it set forth the criteria for its issuance in fact the permit slash application because same document start with the language that states Lake County hereby grants conditional authorization to Alan signature by the county road super and superintendent is not sufficient for the permits issuance in at all in fact the statute grants the county the authority specifically grants the county the authority to vest that power in the road superintendent then there would be an ordinance to that effect there is unfortunately we're dealing with Lake County Montana and unfortunately that's what we're dealing with and and there is there is not an ordinance again the procedure your client has an alternate road I mean a road connection that will let him get on any public highway or road in the county right he does have he does have all doesn't want to use that because he's accommodating his neighbors dumping supplies or something during the summer right there it's it's a very it's a very awkward access your honor and and there have been problems with that access and frankly I think when he was the builder that built the house and laid the didn't he did what he's doing well and he was relying relying as I think he justifiably could on the county's actions in in dealing with with the permits and frankly I think that the the existence of the alternative access is really a red herring in this case what did he get a did he get a permit on the that was a private that's a private access across neighbors property and and really I think that that that that is a red herring in this case because what we're dealing with is his right to utilize his property in a manner consistent with with the means by which every other landowner in that community is utilizing its property so why don't we go to the officer maybe we should talk about the equal protection yes exactly what facts are in dispute that require a trial in order to resolve that I think there are many the district court in its order granting summary judgment on the equal protection claim based its decision on what it said was insufficient evidence to show although recognizing that there was a differential treatment and I don't think there's any dispute here when you're dealing with one permit denial out of thousands I don't think there's any dispute that there was differential treatment here the district court said that well there's nothing really to show that that differential treatment was anything other than accidental I would admit your honors that the record is replete with evidence that a jury could certainly find that the county's and the commissioners actions were more than accidental there was clear animosity between the county sanitarium and mr. Gerhart that animosity a jury could certainly infer was imparted to the commissioners particularly since particularly since the county sanitarium and one of the commissioners the Commissioner the only Commissioner mind you that was able to testify that well I yeah I thought about reasons for the denial of the permit the only Commission had a close working relationship had worked directly with one another in fact there's an email in the file dealing with the issues involved in this case it's at the excerpts at 125 126 directed by our Terry Murphy the county sanitarium to the county attorney where mr. Murphy states if the county has other issues then let's team up and make it worth our while I have a long history with mr. Gerhart to say that he is smooth to the point of being slimy is an understatement I think that that piece of evidence in and of itself is sufficient for a jury to infer that the county's actions in dealing with mr. Gerhart rose to a level beyond beyond simple simple accident well now your contention here is based on the Willowbrook case I assume Willowbrook Supreme Court but it's actually yeah I mean the our primary the primary case relied upon in our equal protection argument was Squaw Valley which yeah in the Willowbrook case is the class of one which we're dealing with yes yeah but but part of the three-part test in the Willowbrook is there has to be a rational that there has to be an absence of a rational basis what is your response on that and an absence of rational basis can be shown and I think the cases are clear by showing pretext by showing facts sufficient to give rise to to pretext and I think the facts in this case are very much sufficient for a jury to determine that the rationale stated by the reasons they gave you know one of the afterwards one of the reasons they gave was that the road covered the the drain clearly pretextual because it was based on nothing more than than speculation at best if if that speculation was even true mr. Gerhart through his counsel flat told them that that that condition was not true and it is not and what did the county do nothing counsel you're down to a minute and a half so you may want to reserve I will do that your honor thank you very much you'll hear from the county good morning may it please the court I'm Deanne Cooney and I represent Lake County in this matter I would begin by saying that the lower court was correct in its Mr. Gerhart had no legitimate expectation of a property interest in this matter well now what about the signature of mr. Ely on the on the permit mr. mr. ale ale sign the permit as a recommendation to the commissioners that the the access be approved there is testimony in the record that he had concerns about the access concerns about the steepness of the access but he did sign it to recommend approval there's no that be enough to vest a certain entitlement at least sufficient to pursue these claims in the in mr. Gerhart well there's no evidence of any delegation of authority by the county to mr. ale to authorize the access easements but apparently there's no statute and there's no ordinance that even deals with this isn't that right this is all kind of ad hoc it's all a very informal process and the and the facts and the parties are agreed to that it's a it's an informal process why wouldn't it be reasonable for mr. Gerhart to assume that since mr. ale had signed the permit that he could expect that he could get it well because the taken care of prior to prior to construction being being undertaken and in this case the access was constructed and completed prior to the application being made I didn't French on County property it was all on the owner's property though wasn't it yeah it had to it was done or it's on the property property it did not need a permit that's true the permit also provides that the Lake County Commissioners excuse me that the Lake County Commissioners can can revoke the permit at any time I just don't think there's anything in the the road supervisor had authority to to provide the access and I also would like to point out that that was not argued below the whole delegation of authority issue was not raised or argued below and it should not be considered by this court are there 10 adjoining property owners that have had no difficulty at all joining the county road I'm sorry are there 10 neighbors of the petitioner who have county access to the county road no trouble at all well that's what he has that's what he has stated I think the county doesn't seem to dispute that and there are no permits the county has to concede that there the file does not contain other permits this is true but he needed a permit now why was he singled out in that context that's what that's when I look at the record and I see that his 10 neighbors went ahead and put the access in without even asking for a permit and the county is not pursuing them why why was he singled out I I think that I I don't have a specific answer that and I don't think we're gonna file for all this time what what what do you point to I'm sorry I did not hear you you should know the record right I do know all right so what's in the record that supports that would lie to answer judges gambles question there there's there had been concern of by somehow this came to the attention of the of the commissioners the county road system in the county is well one neighbor grumbled right a neighbor grumbled and so that sent the could be road supervisor out to the property he checked it out you see me had some concerns but then he signed up on that's true the county road supervisor looks at the roads on behalf of this on the county and and makes a recommendation of arbitrary of the commissioners not to approve it isn't it well they have complete discretion to take take those steps in the best interest of the county have the authority to be indiscreet and in terms of prejudice well that was not the basis of this your honor there were legitimate concerns about the steepness of the road and there were also concerns about the road going over the drain field they didn't shut the other nine Kent roads down did they they did not council why don't we talk about the equal protection issue in other words the Willowbrook analysis yes well it's it we have to hearts application was treated differently because that's clear what mr. Garrett has tried to do though is to to bootstrap his his contentious relationship with the county sanitation officer into the the commissioners having some sort of animosity towards him and I think I don't think the fact that he had a contentious past can be an appropriate for an inference to make the commissioners to create that inference that the commissioners had the same animosity there's a an absence in the record of any any complaints that mr. Garrett had or any problems that he had with Commissioner Tressler and that any he stated in his briefs that somehow because Commissioner Tressler worked with with the road supervisor that that created an inference that he had the same animosity towards mr. Gerhart or that he did not want to deal with mr. Gerhart mr. Tressler was a sanitarian for the county he was aware of the conditions of the lots and how the lots were set in and where the drain fields had to go so there was a reasonable basis it was a reasonable concern and for mr. Gerhart mr. Gerhart has argued that his attorney provided Evans that there was that the the drain field the road did not go over the drain field he provided his assertion that it didn't go over the drain field and said if it did go over the drain field then it was done appropriately the commissioners asked him asked him to or offered him the opportunity to meet with them and he could have provided specific information and evidence that it did not cross the drain field but even the county never established that it did go over the field they said if and never followed up now isn't that you know we're talking here about reasonable contentions of fact isn't that enough to at least raise an issue of pretext I don't believe it is your honor I think that the county's knowledge the commissioners knowledge of the area and knowledge of how the the drain fields were set in and the dimensions of the of the lot and where the road logically had to go but they never established that they did not and mr. Gerhart did not establish with evidence that the road did not cross the drain field he did not present them initially with any evidence that they had to to to refute in order to just have a basis to to have a concern about it and they didn't really foreclose it they they had left the opportunity open in it it could have been discussed further but I don't think mr. Gerhart provided any evidence that countered what the basis of the the county was super ever been any attempt to settle this yes yeah it wouldn't take much that's you would have to talk to anything further counsel I have nothing thank you very much mr. Fredrickson you have a little reserve time couple of things counsel for the county indicated during her argument that there was no evidence of delegation there is more evidence of delegation I would submit than there is of none or of no delegation she also asserts that issue was never raised is that that is that is not true it will it may not have been terribly it may not have been articulately raised it was it was one of the key issues that was dealt with below and we've cited in brief and I believe it's excerpts of the record 167 68 or 68 69 where in briefing below which we were not involved in the issue did come up but it's interesting that that that they take that position when mr. ale and I'm sorry I mispronounced it signs the permit and who signs the denial letter I would submit that the signature on the denial letter by the same individual who signed the permit is certainly evidence of authority and of delegation of authority the county also took the position throughout their briefing and I heard it again on argument that this was completed prior to construction that is not true thank you counsel your time is expired before we submit this case my colleague raised the potential of settlement if there is a sense between counsel here present that the services of our mediator our Ninth Circuit Court mediator would be of assistance why we'd be very happy to assign the case to the I think we need a signal is there so you've been through the mediation process with us the circuit mediator you have very well all right very well well it sounds to me like we will submit this case for decision
judges: Beezer, O'scannlain, Paez